UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ANNA DEYOUNG, in her individual capacity and as Executor under the Will of Jeffrey Maddox,<br><br>Plaintiffs,<br><br>v.<br><br>CHRISTOPER JAMES CONNER, CONNER AND ASSOCIATES, LLC, d/b/a FRANCHISE MARKETING SYSTEMS, GREG RONDINELLI, JOHN F. COGGIN, CPA PLLC, ANODYNE PAIN AND WELLNESS, INC., WAYNE MACK, RICHARD WALDO, GREGORY SIMONS, JEFFREY STEVENSON, FRANDEVCO LLC, BRANDON WILSON, FRANCHISE CONSULTING CORPORATION and PATRICK ELSNER,<br><br>Defendants. | Civil Action No. 4:24-cv-01580 |

## PLAINTIFFS' ORIGINAL COMPLAINT

COME NOW, Plaintiff Anna DeYoung, in her individual capacity and as Executor under the Will of Jeffrey Maddox ("Plaintiffs") in the above entitled and numbered cause, complaining of Defendants Christopher James Conner, Conner and Associates, LLC d/b/a Franchise Marketing Systems, Greg Rondinelli, John F. Coggin, CPA PLLC, Anodyne Pain and Wellness, Inc., Wayne Mack, Richard Waldo, Gregory Simons, Jeffrey Stevenson, Frandevco LLC, Brandon Wilson, Franchise Consulting Corporation and Patrick Elsner (collectively, "Defendants"), and in support would respectfully show the Court as follows:

### INTRODUCTION

Plaintiffs bring this lawsuit, because they were fraudulently induced to purchase franchise rights from Anodyne Franchising, LLC (the "Enterprise").

The Enterprise was a franchisor which purported to provide administrative and management services to Anodyne-brand pain management clinics in accordance with Anodyne's business methods. It sold over thirty (30) franchises in twelve (12) consecutive months but did not result in the opening of more than a few units before filing bankruptcy and liquidating.

Plaintiffs obtained a judgment based upon the fraud committed by the Enterprise. The judgment was entered in Docket No. 1:23-cv-00703-UNA in the United States District Court for the District of Delaware based on a reasoned arbitration award on June 28, 2023 in the amount of $484,910.91 with interest at 9.5% from May 31, 2023. *See* Exhibit A.

This lawsuit is to recover losses due to the racketeering activity by individuals who performed the fraudulent acts of the Enterprise through acts of racketeering, and continued this fraudulent franchise scheme, including the looting of this Enterprise.

I.      PARTIES

1.      Plaintiffs are Anna DeYoung, in her individual capacity and as Executor under the Will of Jeffry Maddox, with an address at 1319 Du Barry Lane, Houston, TX 77018.

2.      Defendant Christopher James Conner ("Conner") is an adult individual residing in Georgia. Mr. Conner is the subject of various franchisor and securities law consent orders for fraudulent franchise sales beginning in March 2015. Pursuant to the consent orders, he agreed to cease and desist future franchise sales violations in the states of California, Maryland and State of Washington. Mr. Conner engaged in fraudulent conduct of this Enterprise by concocting a scheme to misrepresent to prospective franchisees that independent pain management locations which were not franchised, were the economic equivalent to "company owned" locations of the Enterprise, and for that reason, could be used as comparators contained in Item 19 of the Franchise Disclosure Statement to sell franchises offered by the Enterprise to represent what a franchisee

could reasonably expect to earn. Under the Franchise Rule, these representations are called "Franchise Performance Representations" or "FPRs."

3. Defendant Conner and Associates LLC, d/b/a Franchise Marketing Systems ("FMS"), is a Georgia limited liability company owned solely by Defendant Conner which develops franchise programs for franchisors to sell. Defendant FMS was the conduit by which Mr. Conner participated in the fraud and was similarly subject to the previously mentioned consent orders prohibiting future fraud in the offer and sale of franchises.

4. Defendant Gregg Rondinelli is an adult individual residing in Tennessee and is a citizen of Tennessee. Defendant Rondinelli, who started as "CEO/Manager" of the Enterprise in August 2019, hired Defendants Conner and FMS to fraudulently sell franchises by characterizing unfranchised pain centers under different brands as "company owned" by the Enterprise, and did so by telephone and by email on October 9, 2019, and set upon an illegal method of marketing these remotely affiliated pain centers as the equivalent of "company owned" units which could be used as an analogue to sell franchises. Defendant Rondinelli also acts as a "consultant" to Defendant FMS.

5. Defendant John F. Coggin CPA PLLC is an accountant (the "Accountant") whose misleading and inaccurate audited balance sheet and income statement for year ending December 20, 2020 were an exhibit and part of the Franchise Disclosure Document ("FDD"). The false and fraudulent financial statements contributed to the fraud by failing overstating the assets and income of the Enterprise by failing to reserve initial franchise fees for unopened franchises sold, and mischaracterizing certain expenses and liabilities which would have disclosed some of the fraudulent information misrepresented by the FDD.

6.      Defendant Gregory Simons ("Simons") beginning in March 2021 was CEO the Enterprise, who backdated the FDD to January 2021, failed to update the FDD and knowingly authorized the issuance and sale of franchises with the fraudulent FDD thereafter by email. In addition to the fraudulent sales of franchises, he authorized the fraudulent conveyance by the Enterprise of a guarantee of debt owed by the parent company of the Enterprise, Anodyne Pain and Wellness, Inc., to pay himself and others a recapitalization dividend at the expense of the Enterprise, and the franchisees who purchased, and otherwise looted the Enterprise.

7.      Defendant Anodyne Pain and Wellness, Inc. ("Wellness"), a Delaware corporation, is the parent company of the Enterprise, and the parent company of several pain centers, which because of medical licensure laws, are actually owned by medical providers and not any Defendant in this case. Wellness has an income interest in these pain centers, which the Enterprise characterized as "Company Owned," in order to fraudulently sell franchises. Wellness took free cash from the Enterprise, to pay its debts which were not the debts of the Enterprise, for the benefit of other individual defendants.

8.      Defendants Wayne Mack, a Massachusetts resident, Richard Waldo, a Massachusetts resident, Gregory Simons, a Florida resident and Jeffrey Stevenson, a New York resident, were members, owners or managers of the Enterprise and Defendant Wellness, and usurped the profits of Enterprise, and paid themselves from the revenues generated from the fraudulent franchise sales.

9.      Defendant Frandevco LLC, a North Carolina limited liability company, through its franchise salesperson, Defendant Brandon Wilson, knowingly disseminated, by telephone and by email, and sold franchises to Plaintiffs which he knew contained fraudulent information, and

collected unreasonable commissions from the Enterprise, and failed to disclose his true interest as a franchise broker in the sales transactions.

10. Defendant Franchise Consulting Corporation ("FCC"), through its franchise salesperson, Defendant Patrick Elsner, knowingly disseminated and sold franchises to Plaintiffs which he knew contained fraudulent information, confirmed the fraudulent misrepresentations in emails and by telephone, and collected unreasonable commissions from the Enterprise, and failed to disclose his true interest as a franchise broker in the sales transactions.

## II. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964. The Court also has supplemental jurisdiction over State law claims.

12. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendant John F. Coggin CPA PLLC, a Texas professional limited liability company, is subject to personal jurisdiction in this judicial district, and resides in this district.

## III. FACTUAL BACKGROUND

13. This suit is brought because of misstatements and omissions made directly by Defendants and through the Enterprise in connection with the sale of a franchise and their fraudulent statements and conduct through the Enterprise. The purchase was induced by materially false, fraudulent and misleading statements and omissions contained in the Anodyne FDD received by Plaintiffs on May 12, 2021. Based on the FDD, Plaintiffs signed on May 29, 2021 a Franchise Agreement and a Multi-Unit Development Agreement (the "MUDA") and paid $270,000.00. The Franchise Agreement was subsequently amended on June 1, 2021. Plaintiffs incurred additional losses in attempting to open their franchise and recover its payments on account of the fraud.

14. In order to sell Plaintiffs a franchise opportunity, on May 12, 2021, the Enterprise, directly or through their sales agents, electronically delivered to Plaintiffs a FDD, purportedly in compliance with the Federal Trade Commission Rule, 16 CFR Parts 436 and 437, "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunities; Final Rule," March 30, 2007 (commonly referred to as the "Franchise Rule").

15. Plaintiffs were entitled to rely on the written representations and financial information contained in the FDD.

16. Item 7 of the FDD is required to disclose material information regarding the expense of performing under the Franchise Agreement and MUDA.

17. Other items of the FDD are required to disclose material information necessary to make an informed decision regarding whether to purchase a franchise in accordance with the Franchise Rule.

18. The FDD contained material misstatements and omission upon which Plaintiffs justifiably relied in order to purchase the MUDA and pay the initial fee for six units of $270,000.

19. The Enterprise filed a Chapter 7 bankruptcy case on November 22, 2023 in the United States Bankruptcy Court for the District of Delaware, Case No. 23-11902. During the case, the full scope of the racketeering activities by Defendants became apparent based on the testimony given by the Enterprise at the Rule 341a First Meeting of Creditors.

20. All of the material misstatements and omissions to Plaintiffs occurred January 1, 2021 to June 1, 2021, but had occurred to others with false and fraudulent FDDs from September 2020 until August 2021 through the dissemination of FDDs and telephone calls by the Defendants, their agents, and the Enterprise:

## Material Misstatements

(a) FDD Item 7 Material Misstatements of Expenses.

    (i) The FDD on page 46 explains that the typical location is 3,000 square feet. Item 7 explains that the leasehold improvements for an Anodyne Clinic-New Builds is at most $15,000, and does not provide any qualifiers to such representations. Plaintiffs, who are financial analysts, built a financial model based on these representations which supported the purchase price and their investment.

    (ii) Plaintiff purchased the MUDA based on the written representations regarding the cost of building new locations.

    (iii) After purchasing the MUDA, they priced the leasehold improvements for their location and determined that the actual cost, even with competitive bidding for the work, was $195,000.00 per unit. That cost rendered their financial model, and probably the entire franchise model untenable.

    (iv) Anodyne knew or should have known that the projected cost of improvements were vastly understated and had inadequate basis to support the projected expenses.

## Misstatements and Omissions Regarding Identification of Franchisees

    (i) The FDD contained in Item 20 a list of nine franchisees, which should have been franchisees who purchased during 2020. Of the nine franchisees listed in the FDD, only one had an address and telephone number listed, and none of whom were listed as a multiunit developer.

    (ii) According to the FTC Rule, the FDD should have listed the name, business address and telephone number of each of these franchisees "since the purpose of this disclosure is to enable prospective franchisees to contact existing franchisees." FTC FAQ No. 19.

    (iii) Nor does the Item 20 tables list the contact information of any of the Enterprise's franchisees, even though Anodyne had at least one in 2020 with a location.

    (iv) The balance sheet and income statement do not evidence that the initial franchise fees from unopened franchises are identified, are segregated and not used as part of the operating funds of the Enterprise.

    (v) Defendants misrepresented the number and character of its "Company-Owned outlets" in item 19 of the FDD.

    (vi) Defendants misrepresented the selection and protections of the territories Plaintiffs would receive.

(vii) Had Plaintiffs had the opportunity to contact these franchisees and the other information concealed or misrepresented, Plaintiffs would have learned information that would have resulted in Plaintiffs not purchasing the franchise.

### Misstatements and Omissions Regarding Financial Disclosures

(i) The balance sheet in Exhibit F of the FDD does not reflect the contingent liabilities of the franchisees whose locations have not opened for the initial franchise fees or the identification of revenues received from them. The financial statements presented do not reflect the initial franchise fees which should not be recognized as income until the locations opened. The balance sheet also does not reflect the debt owed to an affiliate which was ultimately disclosed in the bankruptcy of the franchisor.

(ii) Without this information, Plaintiffs, who are financial analysts, had only an incomplete and distorted picture of the Enterprise which falsely induced them to purchase.

### Omission of Identity of Franchise Sellers

(i) Item 23 of the FDD requires the Enterprise to disclose each "Franchise Sellers" on the Acknowledgment of Receipt given to the franchisee, and to be updated at the time of sale as required by 16 CFR section 436.5(w).

(ii) The disclosure obligation is the name, address and telephone number of each Franchise Seller. *See also* FTC FAQ No. 12. This would include any franchise brokers or anyone who received a commission or compensation of any kind for leads or sale of this franchise.

(iii) Plaintiffs trusted the information that they received from the many folks that they talked to who were concealed franchise brokers. The Enterprise and its agents additionally referred them to professionals and others who had an interest in completing your sale without full disclosure.

(iv) Plaintiffs would have sought independent professionals and consultants had the proper information been disclosed and would not have purchased this franchise based on the information they relied upon if they knew the truth about each Franchise Seller and professionals with conflicts of interest.

### IV.     CAUSES OF ACTION

### Count One-Fraudulent Misrepresentation

21. Anodyne and Defendants made representations of an existing or past fact.

22. The representations were false when made.

23. The representations were in regard to material facts.

24. The false representations were made either knowingly or without belief in its truth or recklessly.

25. Plaintiffs reasonably relied on the misrepresented material facts.

26. Plaintiffs suffered actual damages of $270,000 for the initial franchise fees, as well as costs for SBA Loan Finder Fees, legal review, and architect costs totaling another $30,000, as a result of the misrepresentations, together with attorneys' fees and costs. The total actual economic, ascertainable damages is equal to $300,000.00, before accounting for attorneys' fees and costs.

### Count Two-Negligent Misrepresentation

27. Anodyne and Defendants made representations of existing or past fact.

28. The representations were false when made.

29. The representations were in regard to material facts.

30. In the alternative from the fraudulent misrepresentations, the false representations were made negligently.

31. Plaintiffs reasonably relied on the misrepresented material facts.

32. Plaintiffs suffered actual damages of $300,000, in addition to attorneys' fees and costs, as a result of the misrepresentations.

### Count Three-Fraudulent Concealment and Failure to Disclose

33. The Enterprise had a duty to disclose the following under the FTC Rule Governing the Offer and Sale of Franchises:

   a. Cost of Opening New Locations;

   b. Complete names, addresses and contact information of actual franchisees;

      c. All parties who were "Franchise Sellers" within the meaning of the Rule; and

      d. Unopened franchise initiate franchise fee deferrals, a true nature of the "Company-Owned" locations.

34. This information is deemed material by the FTC, and was material to Plaintiffs.

35. This information was concealed by Defendants.

36. Had Plaintiffs received the information the Enterprise was obligated to disclose, Plaintiffs would have discovered the true expense of performing their development obligations under the MUDA and would not have purchased the franchise.

37. As a result, Plaintiffs suffered actual damages in the amount of the consideration paid for the MUDA of $300,000.00, plus actual attorneys' fees for investigation, obtaining the judgment and bringing this lawsuit.

38. The MUDA incorporates the provisions of the Franchise Agreement which entitles the prevailing party to attorneys' fees, interest and costs.

### Count Four-Violation of Tennessee Consumer Protection Act (the "TCPA")

39. Tennessee Code Ann. § 47-18-109(a)(1) provides that "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated" due to certain unfair or deceptive acts prohibited by the Act can individually sue to recover their damages.

40. The definition of "consumer" under the TCPA includes any person who purchases or is offered for sale "a franchise or distributorship agreement or any similar type of business opportunity." Plaintiffs are consumers who have suffered an ascertainable loss of $300,000.00.

41. The Act allows consumers to potentially sue for *three times* ("treble") their actual damages if the violation of the Act was "willful or knowing."

42. Misrepresenting that the franchise opportunity has characteristics and benefits that it does not have is a violation of TCPA § 47-18-104(b)(5).

43. Misrepresenting that the franchise services are of a particular standard, quality, grade, style, or model and therefore, cost, that it does not have is a violation of TCPA § 47-18-104(b)(7).

44. Defendants violated the TCPA and caused Plaintiffs to suffer actual damages in the amount of their judgment against the Enterprise.

### Count Five-Violation of Texas Deceptive Trade Practices Act (the "DTPA")

45. Sec. 17.46 of the Texas Deceptive Trade Practices Act provides that false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

46. Sec. 17.46 (b) provides that the terms "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

   (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not; and

   (2) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

47. Plaintiff's claims constitute violations of the Texas DTPA §§ 17.46(b)(5) and (7) as to the affirmative statements of Item 7 costs, and § 17.46(b)(24) as to omissions.

48. Sec. 17.50 provides that consumers like Plaintiffs may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:

    (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:

        (a) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and

        (b) relied on by a consumer to the consumer's detriment;

    (2) breach of an express or implied warranty; and

    (3) any unconscionable action or course of action by any person.

49. Under § 17.50(b), in a suit filed under this section, each consumer who prevails may obtain:

    (1) the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages;

50. The actual economic damages sustained by Plaintiffs is the consideration paid for the MUDA in the amount of their judgment against the Enterprise, plus interest and attorneys' fees to collect what is owed.

### Count Six-RICO § 1962(c)

51. The allegations of the previous paragraphs are incorporated herein by reference.

52. This Count is against all Defendants.

53. Anodyne Franchising LLC is an Enterprise which was engaged in and whose activities affect interstate commerce.

54. The Defendants are associated with the Enterprise.

55. The Defendants agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs.

56. Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of mail fraud (18 U.S.C. § 1341) or wire fraud (18 U.S.C. § 1343). The mail fraud occurred by the transmission by mail of the FDDs, supporting sales information, and payments through the US mail. The wire fraud was committed through the use of facsimile, Docusign transmission of the FDDs and contracts, and wire transfers of funds for payment of franchise fees and broker commissions.

57. The acts in the description of each Defendant set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5) which started in 2015 by Defendants Conner and FMS in 2015, and continues.

58. Defendants have directly and indirectly conducted and participated in the conduct of the Enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

59. As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property for loss of their investment, loan expenses and attorneys' fees and costs.

**Count Seven-RICO § 1962(d)**

60. The allegations of the proceeding paragraphs are incorporated herein by reference. This count is against Defendants Wayne Mack, Richard Waldo, Gregory Simons, Gregg Rondinelli, Jeffrey Stevenson and Anodyne Pain and Wellness, Inc.

61. As set forth above, these Defendants agreed and conspired to violate 18 U.S.C. § 1962 (c). Specifically, they conspired to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity (§ 1962(c)).

62. These Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

63. These Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.

64. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

65. As direct and proximate result of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property in that not only have they been defrauded, but the funds from the Enterprise have been looted and Plaintiffs are unable to satisfy their judgment against the Enterprise. Specifically, they committed fraudulent conveyances of a guarantee to a lender so that their other businesses would not need to pay the financing of those businesses.

## V. DAMAGES

66. For the common law claims, the amount of actual or ascertainable damages is the amount of the unsatisfied judgment plus reasonable and necessary attorneys' fees, interests and costs as the contracts allow.

67. For the TCPA and the Texas DTPA, each statute provides for recovery of actual, ascertainable and economic damages of the unsatisfied judgment, plus the award of treble damages, plus attorneys' fees, interest and costs.

68. For the RICO claims, the amount of the judgment previously obtained against the Enterprise, then trebled, plus reasonable and necessary attorneys' fees, interests, costs of investigation and experts and court costs.

## VI. CONDITIONS PRECEDENT

69. All conditions precedent have been met, have occurred, or have been waived.

## PRAYER

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

a. Judgment awarding Plaintiffs all actual damages caused by Defendants actions, including the unsatisfied judgment;

b. Judgment awarding Plaintiffs treble damages under the TCPA and Texas DTPA;

c. Judgment awarding Plaintiffs all reasonable and necessary attorneys' fees and expenses incurred in this matter;

d. Judgment awarding Plaintiffs pre-judgment and post-judgment interest in the highest amount allowed by law;

e. Judgment awarding Plaintiffs all costs of court; and

f.  Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

/s/ *David Grant Crooks*
David Grant Crooks
Texas Bar No. 24028168
dcrooks@foxrothschild.com
Adam T. Hamilton
State Bar No. 24087655
Fed ID No. 3451880
ahamilton@foxrothschild.com
**FOX ROTHSCHILD LLP**
Saint Ann Court
2501 N. Harwood St., Suite 1800
Dallas, TX 75201
Phone: (972) 991-0889
Fax: (972) 404-0516

*Attorneys for Plaintiffs*